## Case No. 1,914.

### BROCK v. TERRELL.

[2 N. B. R. (1869) 643 (Quarto, 190); 1 Chi. Leg. News, 349.] [1]

District Court, S. D. Mississippi.

BANKRUPTCY — PROOF AND PAYMENT OF DEBTS— LIEN OF LANDLORD—DISTRAINT FOR RENT—ACT OF BANKRUPTCY.

1. A debtor promised in writing to deliver six thousand four hundred pounds of cotton to pay for rent, and for mules, corn, and fodder bought from landlord. The debtor assigned cotton and farm-stock to his brother to pay just debts, with his own and brother's knowledge of his insolvency, and subsequently was adjudged a bankrupt. *Held*, landlord could not distrain under the statutes of Mississippi, and had no lien on cotton raised as against general creditors.

[Cited in Re Mallory, Case No. 8,991; Re Brinkman, Id. 1,884; Re Dole, Id. 3,965.]

2. The debtor's transfer to his brother was an act of bankruptcy.

[3. Cited in Re St. Helen Mill Co., Case No. 12,222, to the point that the assignee is the agent of the creditors, and as such may maintain proceedings in regard to the property of the bankrupt which, on grounds of public policy or otherwise, the latter would not be allowed to do.]

In bankruptcy.

HILL, District Judge. This cause is submitted upon petitions in the nature of original bill, cross bill, answers, and proofs. The original bill was filed by A. J. Terrell, bankrupt (there being no assignee appointed), to enjoin proceedings under the statute to distrain for rent, brought by Brock against A. J. Terrell. The proceedings were founded upon a written obligation made by A. J. Terrell to Brock, promising to deliver six thousand four hundred pounds of good lint cotton, in payment of rent of land, and for mules, corn, and fodder, purchased from Brock.

This proceeding cannot be maintained for three reasons: First. It is a contract to deliver property, and not to pay money. Second. It embraces payment for property, as well as rent of land. Third. The proceedings were commenced after the act of bankruptcy, or the filing of bankrupt's petition. The injunction must therefore be made perpetual, and the defendant Brock, in that petition, be taxed with the costs, so far as they may have accrued upon that proceeding.

The cross bill alleges that A. J. Terrell, by his written contract, is bound to deliver to the said Brock twelve bales of cotton weighing four hundred pounds each, which he has failed to do, and that petitioner has a lien on said cotton under said written contract, worth, at the time it was contracted to be delivered, twenty-five cents per pound. That said Terrell is proceeding to obtain a discharge from his debts and liabilities under the bankrupt act, but that no assignee has

[1] [Reprinted from 2 N. B. R. 643 (Quarto, 190), by permission. 1 Chi. Leg. News, 349, only contains a partial report.]

as yet been appointed. That said bankrupt, in his schedules, set forth no secured creditors, but states said claim as an unsecured claim. That a short time before said bankrupt filed his petition, he fraudulently sold and conveyed to said J. C. Terrell, his brother, a number of mules, bales of cotton and other property, and fraudulently failed to place the same on his schedules. That, at the time said transfer was made, said A. J. Terrell was insolvent, which was then well known to said J. C. Terrell, and that said transfer was made to give a fraudulent preference to said J. C. Terrell, over other creditors; and prays that all of said property be delivered up, or its value paid, first, for the satisfaction of said claim, and the balance, if any, for distribution among the other creditors.

The answer of said A. J. Terrell and J. C. Terrell, admits the execution of the written contract and the sale of the property to J. C. Terrell, but denies that said contract was fraudulent, as charged, but that the property was sold at a fair price, in payment of debts due said J. C. Terrell and others, for the payment of which he was bound. That in October, 1868, A. J. Terrell delivered to said Brock four bales of cotton, in full payment for the rent, corn, and fodder. That the mules were bound by deed of trust to Price, trustee, to secure the payment of a debt due to Coffee, and were delivered to the trustee, all of which was in full discharge and payment of the obligation.

Three questions are thus presented: First. Was the obligation to deliver the cotton discharged, as claimed in the answer? Second. If not, was the claim a lien on the cotton raised on the place and sold to J. C. Terrell, and if so, for how much? Third. Was the transfer fraudulent and void, within the meaning of the bankrupt act?

1. It is admitted that four bales of cotton were delivered in part payment of the six thousand four hundred pounds originally due, and that the mules were taken to satisfy the trust-deed to Price. Brock, in his testimony, states that the mules, in the trade, were estimated at six bales of cotton, and A. J. Terrell states that they were estimated at six hundred dollars, but, in his schedule, says they were estimated at five hundred dollars. Six bales of cotton, at the price at the time of delivery, would be about five hundred dollars. It is therefore fair to consider six bales as being discharged by the failure of title to the mules, which leaves six bales, less one hundred and fifteen pounds, the surplus weight of the four bales delivered, over and above the average four hundred pounds. It is also in proof that fifty dollars were paid to one of the Terrells for Brock. Brock states that it was on another account, but the explanation is not explicit, and therefore that amount should be added to the one hundred and fifteen pounds of cotton, as a credit upon the remaining six bales. The agreement to re-

ceive the four bales and the fifty dollars in payment, is denied by Brock; no reason is given why it should have been done, and Terrell put the claim in his schedule of debts, for which he offers an explanation, but not a satisfactory one. The debt being admitted to have once existed, the onus of proving the payment is on the debtor, which is not made out by his own proof, denied by Brock. When we take the want of a reason for such acceptance, and the other fact, that it was embraced in the schedule, I think the claim is sufficiently established to two thousand four hundred pounds, less the one hundred and fifteen pounds and the fifty dollars. Cotton, at the time of delivery, was selling at twenty to twenty-two cents, say twenty-one, making balance due four hundred and twenty-nine dollars and eighty-five cents.

2. Was this claim a lien on the cotton as against the general creditors of said bankrupt. The deed of trust, if it may be so called, was not acknowledged or recorded, and consequently could only be held a lien as against the maker or his personal representative. The assignee is the agent of the creditors; the assignment is to him for their use, and is not affected by secret liens. Had the contract provided that Brock should have such a part of the crop, or a specific number of bales of the crop, then Brock would have been a joint owner with A. J. Terrell, of the crop to that extent; but the contract is for the delivery of so many pounds of cotton, without specifying where grown. The result is, Brock can only claim as a general creditor.

3. Was the transfer to J. C. Terrell void in contemplation of the bankrupt law? The transfer was made the 13th December, 1868, and embraced all the property A. J. Terrell had, except a very few exempt articles, not reserving a cow, or hog, or a bushel of corn. The schedule of debts owing, shows besides this claim nearly two thousand dollars, all made in 1864 and since, quite an amount in 1867. To these amounts add interest, and it will swell up to nearly two thousand five hundred dollars. It is impossible to suppose he could have been ignorant of his insolvency and bankruptcy, for he had broken up business, and gone to live with his brother. J. C. Terrell admits that at the time he knew that his brother, A. J. Terrell, was insolvent, and insists that the property received was not of sufficient value to pay him. In proof that he knew of his insolvency, he promised, if it sold for more than enough to pay what he was bound for and what was owing him, he would apply the remainder to other debts; besides, was to take care of A. J. Terrell and his family. He knew that it was all the means of his brother, subject to execution; besides, that owing to the injury his brother had received, he was not expected to raise a crop the present year. The debts paid to others for which J. C. Terrell was bound, with that owing to himself and

J. H. Terrell, amounted to twelve hundred and fifty-seven dollars and fifty cents. The property received and disposed of in the payment of these debts, is stated to be ten bales of cotton, or about that number, but it is admitted there were twenty-four bales made; four were delivered to Brock, and one went to pay hands, leaving nine others unaccounted for, besides the other property. According to the estimates, the cotton in the batch made ten bales, which, at eighteen cents, the price he sold at, makes the seven hundred and twenty dollars. The remaining nine bales, if J. C. Terrell received them, are good cotton, having been picked out before it became so much damaged, and would, at twenty-two cents, make seven hundred and ninety-two dollars, and in all fifteen hundred and twelve dollars. From this deduct two hundred dollars for gathering, preparing for market, &c., and it leaves over thirteen hundred dollars. The other property, at the estimates, amounts to about four hundred and fifty dollars—in all say seventeen hundred and fifty dollars. The individual claim for four or five hundred dollars was not estimated in the trade.

To hold that this was not a void sale, in contemplation of the thirty-fifth section of the bankrupt law [14 Stat. 534], would be a violent presumption. It was certainly giving an unfair preference to one creditor over others, within the knowledge of both contracting parties, and they must be presumed to have intended the reasonable result of their own action. The contract must therefore be held void, but in so holding, it is but fair that J. C. Terrell, who has assumed the care of his brother and family, shall have the means to do so which A. J. Terrell would have had, if the transaction had not taken place. This would give him the horse, the corn, the fodder, the cattle, and twenty head of the hogs, which will only charge him with one mule, and about twenty-five dollars for the balance of the hogs, in addition to the cotton, unless it shall be made to appear that he received other property under said sale. The circumstances of A. J. Terrell at the time the sale was made, rendered it necessary to make the sale to some one, to save the property from destruction, and although not sufficient to render the sale valid, so as to give J. C. Terrell the preference claimed, will upon principles of equity allow him to come in and prove the twelve hundred and fifty-seven dollars and fifty cents which was paid off after the purchase by him. But the true amounts with which he should be charged not appearing to the court, this cause must be referred for an account, and J. C. Terrell must deliver to the assignee any of said cotton or hogs remaining on hand, for sale as other property belonging to the estates of bankrupts.

All other questions will be reserved until the report of the commissioner shall be made.